Good morning, your honors. May it please the court. Maggie McCletchie for plaintiffs Genoa Jones and Cornell Tinsley. I hope we have lots of questions today, but I'm going to do my best to reserve five minutes for rebuttal if I may. The plaintiffs and their dogs did nothing wrong. The plaintiffs' dogs were contained within a fully contained and enclosed yard that just happened to be in the vicinity of a police investigation. While in the district court below, North Las Vegas contended that because plaintiffs were entirely unrelated to the criminal investigation and not criminal suspects, their Fourth Amendment rights were diminished. In fact, of course, the Fourth Amendment case law demands the opposite, and Fourth Amendment protections are at their zenith in one's own home in Curtilage. Where warrantless searches made and defendants assert the hot pursuit exception to the Fourth Amendment, the case law requires both probable cause and that the search was immediate and continuous. With regard to probable cause, the question is, of course, whether there was a fair probability that the search of plaintiff's yard would locate the suspect. Would a person of reasonable caution believe the suspect was there? The answer to that question is no, and at the same time, there was probable cause. Kagan. Can I jump in and actually ask you a question about something different? Sure, of course. So say we agree with you about the search. You also have a seizure claim about the shooting of the dogs. But the United States in Mendez said that when you have a search claim, you can get damages for the search that is essentially a seizure. And I'm wondering why you need the seizure claim for the shooting of the dogs if it could be damages for the search, if you went on the search. I don't believe that we need to establish the separate seizure. I do think there was both an unlawful search and seizure here. But I do think under Mendez that these are the — that the shooting of the dogs was a reasonable, reasonably foreseeable result of the unreasonable actions in this case, including the unlawful entry, including being aware there were dogs present, including the lack of exigency in the circumstances in light of the lapse of time between when they had seen the potential suspect and when they entered plaintiff's yard. But let's say that your clients were home. They saw a person come into their yard. They didn't recognize necessarily that it was a police officer. And they pulled a gun and pointed it at the individual. And the individual said, you know, stop, I'm a police officer. And the person fired a shot at them. Wouldn't the police officer be entitled to return fire? If they had entered their yard, if not, if — not if, in my view, the question would be would they have the obligation to — would they have the obligation to determine whether they needed to enter the yard. This was not a fleeing suspect situation. I understand. But when you get in that situation, whether the police officer was at fault or not, you can't expect him to not use force under some circumstances, can you? Of course, under some circumstances. And of course, when the officer's life is at risk. But that doesn't excuse the officers from having to take reasonable steps to avoid such harm. And here we had Officer Salkoff do a number of things that were unreasonable in addition to the fact that there wasn't sufficient probable cause or other bases for the Hawker Student Section. So, sorry, I think Judge Lasnik is trying to ask you just about the seizure claim, I think. Yes. So I think you went back to the search, which sort of was my point. If you went on the search, I don't know if we need to even talk about the seizure. But if we're just talking about the seizure for a moment, once you're in the yard and there's a danger, why can't you use force to deal with the danger? Once you're in the yard, and why can't you use force? Well, in Hells Angels, once they were in the yard, there was danger posed, but they had not sufficiently planned. I understand that. So Hells Angels is before Mendez, though. Does Hells Angels survive Mendez? I do believe Hells Angels survives Mendez. Why? Because Mendez says, we don't look at how you got there, we don't look at the search, we just take it for the seizure at the time. Because what Mendez also says is that you still, I don't think Mendez changes the fact that you have to act reasonably under the circumstances. And in Hells Angels, they didn't act reasonably under the circumstances by failing to plan. Here, not only did they actually have no need to enter the yard and have more time to develop a plan to appropriately use force, the way that they approached the need to use force wasn't reasonable for a number of reasons. There wasn't a cover officer there, not because of any law enforcement reason, but because of K-9 Storm, who was an unpredictable dog's lack of tolerance for other officers. That's number one. Number two, Officer Salkoff still entered the yard with his dog, without a cover officer, despite knowing that he personally can't use OC spray. So if he enters a yard without any cover, it's very likely, especially in private residences in this area, that he could encounter dogs. Yet, other than potentially kicking them away, he really only had force. And our expert report talks about the reasonableness, or the lack thereof, rather, of his actions. And again, Fourth Amendment questions are questions for the jury. The Mendez case doesn't say that whenever potential danger arises, there's no potential Fourth Amendment claim. Officers still are required to act reasonably under the circumstances. And under the totality of the circumstances here, they did not. And is Hells Angels really the only case that you think clearly establishes this? Because in Hells Angels, they had a full week and actually knew the dogs were there. There's some pretty distinguishable facts. So I'm not sure how it clearly establishes this, even if Hells Angels does survive Mendez. Well, Hells Angels, Hells Angels, Hells Angels discussed the fact that despite the fact there hadn't been another dog shooting case, that it fell plainly within seizure-of-property cases, and so that the right was still clearly established even under Hells Angels. This Court also, in another case, talked about the Hells Angels case in the Miller case, which can also be distinguished from the case here, because what Hells Angels stood for wasn't just the warrant. It's just that it explained that when, in the Miller case, in applying Hells Angels, this Court explained that when an officer is taken by complete surprise, then understandably they have to act quickly, and having to use lethal force to kill domestic dogs is more reasonable. Counsel, can we turn a little bit to your Monell claims? Sure. There, you're indicating that the Las Vegas Police Department's written policy on the Fourth Amendment was deficient. You indicate that that was part of the reason that your Monell claim survives. You also indicated that the officers misunderstood or misapplied the Fourth Amendment. You also indicate there was a pattern of incidents involving the policy. But here's the question, though. Is the evidence that you've provided in this case sufficient to really let this Monell claim survive? Because it seems to be a bit sparse. I do think it's sufficient to survive to go to a jury. I think there are disputed facts. Additionally, in this case, with regard to the perimeter search, I don't think it's disputed in the record that the perimeter search was they searched other homes without warrants in the area, in the area. And this search, during Rose's deposition testimony, it's clear that this search was not a unique approach for law enforcement.  But so are you saying this incident itself shows that there was a pattern of violations that's the pattern you need for Monell? I think they searched in a number of houses. In addition, Officer Rose ---- There needs to be deliberate indifference to a pattern that already exists that showed them they needed more training. So if it all happened on this day, that doesn't help you, right? But that concerted action, the fact that they consistently searched other homes, this home was not a one-off. Where there's concerted action ---- But where's the pattern, the prior pattern? The prior pattern is the testimony of Officer Rose during his deposition that this was this perimeter approach was a standard practice and that they didn't, unlike the city of the Las Vegas Metropolitan Police Department, they don't usually use helicopters, for example, to help them search with perimeter searches. There was testimony that the perimeter search approach was consistent. I think that the district court did cursory review of the record on Monell in light of its decision on the underlying claims. Sorry, what is the, what was the series of violations or the situation of violations that told the city that they needed better training on searches? There's, well, first of all, I think it's, it's, some need for training is so obvious that you don't need a pattern or practice. Fourth Amendment, Fourth Amendment rights are so sacrosanct and important, and it's so likely that officers are going to encounter the issues about whether to enter somebody's home. No, but counsel, she doesn't know what instances are we talking about. So, so what instances we're talking about with regard to dog shootings? We did cite to somebody. I'm sorry, you just jumped to dog shootings. We could talk about that. So there's two things, right? You have a Monell claim about searches and a Monell claim about dog shootings. Yes. So, let's do one at a time. Do you have a pattern of violations about searches that showed them that they needed better training? The, the pattern, the, the, sometimes you don't, I don't, I don't have a history of a pattern of perimeter searches that's not clear in the record. I agree about that. But where there's not necessarily a pattern, you can still have a Monell claim where the need for training is so clear and so obvious, and where an issue is so likely to come up. Here, we, we discussed the deficiencies in their, in their training at ER, and there's evident, at ER 151, issues regarding, nobody knew, there's no specific training on curtilages. There's no specific training on hot pursuits. Was that just the one officer saying that he didn't understand it, though? That was the, there, we, we actually cited to deficiencies in their specific, in, in North Las Vegas's specific training. If I, if I, unless there's another, another related question, may I reserve my time? Well, I guess we wanted to know about the pattern that showed that they needed training on dog shootings. The, the pattern on dog shootings is that there have been other instances in which the city of North Las Vegas has been sued, and there have been other instances in which dog shootings have occurred in the city of North Las Vegas. And are those the settlements where we don't actually know who was at fault or what happened? Yes. And I'm sure, I'm sure Judge Friedland will give you a little more time on rebuttal if I ask a long question. But, you know, we have a bunch of high school kids here and-  Usually, it's like, okay, somebody's evidence was collected and we're going to suppress the evidence. Or a crime was, a conviction occurred, we're going to reverse the crime. What are the damages that plaintiffs seek here today? It's money, right? The, the damages, the damages, I think we saw at declaratory relief as well as monetary relief. And the damages can include the loss of the pets that, I think the loss of the dogs is a foreseeable, a foreseeable injury that does stem from the unlawful entry of plaintiff's property. And do you have some sort of expert testimony on what the amount of money to give these people would make them feel better for losing their two dogs? So, their own testimony is sufficient to, to testify as to the emotional distress and just the indignity of a constitutional violation. The summary judgment briefing never got to the question of damages and only dealt with liability. Damages would be a question for the jurors to determine based on the testimony of our clients. But that issue was not raised by the defendants on summary judgment. And so the record regarding damages is not before the court. But my, my clients do have damages, and it's the distress of having lost their two dogs. And it's just the constitutional indignity for the sanctity of one's home. Is there any reason to think the damages amount would be different if you have a search claim and a seizure claim or just a search claim? It seems like the exact same damages amount. I think it's the same damages. Thank you. There can be, there can be a benefit in having a determination by a court of a constitutional violation separate and apart from damages, though. What would be that benefit? Making clear to law enforcement officers what the limits of the law are. Good morning, your honors. May it please the court. My name is Rion Jarvis Denman, and I represent Lieutenant Scott Salkoff, Officer Michael Rose, and the city of North Las Vegas, the appellees in this matter. Your honors, as the district court appropriately held, the facts of this case clearly meet the standard of hot pursuit. The undisputed facts show that a violent suspect, reasonably believed to be Demario Shapiro, fled the scene of a battery domestic violence in progress upon police response to the scene. Counsel, it's my understanding that from the moment that the officer saw someone leaving the back of the house, to the moment that the dog alerted, some 18 minutes or so had gone by. 18 to 20 minutes, I forget the exact amount. Our case law seems to say that when we're looking at this hot pursuit issue, it's sort of immediate. It's literally folks behind the individual as they're running into a house, or as they're jumping into another sort of secluded sort of area. So I guess I'm trying to understand, what's your best case for indicating that waiting this 20 or so minutes, also during a time when they're not observing the individual that's allegedly absconded. What is your best case to indicate that that is hot pursuit? Your Honor, I think that the record shows that Officer Rose acted immediately upon seeing the person fleeing the area. He then tried to apprehend the suspect by taking his police car around to the other block to try to cut him off at that area. Right, he sectioned off an area, okay, sectioned off an area, several blocks if I remember correctly. But my question is still, what's your best case to that sectioning off several blocks, even though you don't see the individual, you're not immediately behind them, and a period of time of 18 or so minutes have gone by before you last saw the individual, that that is hot pursuit? Because the situation was continuous, Your Honor. While there is no case on point, I think that is part of the issue in this case. The council, all situations are continuous. You know, they could be, yeah, looking for this individual, sure. But how is that, though, a distinguishing factor? Because they were continuously in the area. This is much different than the Welsh and Johnson cases, where the court found that there was no immediate or continuous circumstances in those cases. This wasn't a witness account of somebody fleeing an area and then officers going and finding that person at their home. Why isn't it more similar to Windsor, where you have an individual going into an apartment building and start looking at every single apartment room? In that case, there was no dog alert to indicate to officers that a specific room was where the suspects could be. In our case, in addition to the perimeter, like they had in Windsor, where they said that they, in that case, the perimeter around the hotel, they had probable cause to believe that the person was in the hotel. Just like in our case, they had reasonable belief to believe that the suspect was within the perimeter that was established. However, in our case- A different issue than whether there was an urgency and the imminent pursuit, or active pursuit, sorry, I'm forgetting, immediate and continuous pursuit. Why, I mean, the fact that the dog alerted is sort of a different point. That's like, maybe he's in the yard, but you could think someone's in a house and need a warrant or an arrest. It doesn't, just because you think someone is somewhere doesn't mean you don't need a warrant. Your Honors, in this case, they were, the facts of the case show that they were pursuing a battery domestic violence suspect who fled the scene of a battery domestic violence crime. They had a victim who was clearly substantially injured. She showed facial injuries. This isn't the case of the officers trying to stop someone for jaywalking and then that person flees the scene. This isn't the case of someone- It can be a very serious crime, but you still need a warrant. To search, you still need a warrant unless there's some exception. I think your exception was this hot pursuit idea, but they hadn't seen him for 18 minutes and didn't know. I guess you're saying they think he's in that yard now, but there had been this lapse in time that makes it not really pursuit anymore. Counsel, you really need to accept the fact that this is at best lukewarm pursuit and take it from there because it's just too much time. With all due respect to this violent offender who needed to be apprehended right away, it was not a person with a weapon. It was not a person who put the neighbors at risk. It was a domestic violence situation where ultimately the victim said nothing happened and nothing did go forward criminally, correct? Your Honor, no, nothing did go forward in this case. Let's look at how your officers ended up where they ended up and what they did where they ended up in terms of whether that was reasonable or not. Thank you, Your Honor. The facts that lead up to that point are important to consider as to what the officers believed at the time, and that's what the court needs to look at is what the officers had in mind at the time, the reasonable beliefs that they held upon entering the yard. We can't go back and look in 20-20 hindsight as the Supreme Court has said in Graham v. Connor. We need to look at the time that the officers were there. So this is the reasonable belief that they held that someone was in a perimeter and that they had maintained that perimeter and then canine officers were brought in to be the least intrusive method of searching the yards and utilizing dog sniffing, dogs who were trying to sniff for human odor mixed with apocrine, the, I guess, fear, the smell of fear as the officers stated in their depositions. And so that's the context for which they arrive at this yard. This is not just a random search of a yard. There was no looking at a house and saying, we need to just search that yard. They were next door to that house and the dog alerted to a scent at the wall of that house. So with the context of this search and the need to find a suspect who may, maybe did not have a weapon, but had a criminal history that indicated that he had disregard for the law, plus he fled the scene of this crime. So this wasn't just a spontaneous flight or innocuous. As Justice Roberts stated in his Lang v. California concurrence, flight from police officers is never innocuous. This is somebody who is willing to flee police for a violent crime that he committed with a criminal history that includes assault, robbery. He was a dangerous person. Counsel, we take your point that this was a serious situation and it could have been even frankly worse. But I guess I want to come back to my first question, which is give me your best case. What's the best case that indicates that this, the facts in this case are hot pursuit consistent with what your understanding is? Thank you, Your Honor. I think that, unfortunately, there are not very many cases that clearly establish that this particularly was a hot pursuit. However, the record that the plaintiffs have, the cases that the plaintiffs have provided also show that this is much, those have a much higher standard, that the law was not clearly established under the facts of this case, which is what the court needs to look at. As I explained, the Welsh versus Wisconsin and the Johnson case, and then the other court cases that plaintiffs cite to are out-of-circuit opinions, three of which happened after this case. They also don't clearly establish that at this point, with the knowledge that the officers had at the time that they went to do the search, that they were acting unreasonably or that their behavior violated the Constitution. That's at the time of the search. So there is no case clearly establishing that that was unconstitutional or any broad spectrum of cases that would show that this behavior was unconstitutional at the time that they started the search. And to answer Judge Lasnik's question about what they knew at the time, so at the time they had the background knowledge from what had happened and led them to this point at the house, they also had the dog alerting to a scent coming from that west wall near plaintiff's property. At that point, the officer, Lieutenant Salkoff, looks over the wall of the yard and sees indicia of dogs, but also places where somebody could be hiding. He has the alert. He has a visual confirmation that there are areas that need to be searched in this yard. However, he didn't just jump back into the backyard at that point. Because there was indicia of dogs, Lieutenant Salkoff took reasonable measures to try to alert any dogs that may be back there. He stated for his safety, for the safety of residents, for the safety of his canine, and for the safety of any animals that could be in the backyard, they took reasonable steps to make sure that they were clearing these areas. They were notifying residents in the area by knocking on doors, doing the PA announcements, letting them know that they were conducting this search. Counsel, can I take you to the other arguments? I just want to make sure I'm clear on what your position is with regards to the Monell claims. Um, uh, counsel, uh, just argued and argued in the briefing that sometimes there are things that are so obvious that, that they should be included in these policies and procedures. And here, um, the lack of training on, on Fourth Amendment, on, on, on these issues is so obvious that, that we should indicate that although they may not have a pattern, that that should be sufficient. Thank you, Your Honor. Um, the, the policies and procedures lay out what officers need to do in a search. The, the fact that this is so fact intensive and so fact specific and court cases happen and create this law, it's a very fluid law. And what, what the officers have to look at at the time is what they know to be established in the law. So there can't be a specific policy that says when this, this, this, and this happens, you can search. When this, this, and this happens, you can't. Officers have to know the law and have to understand and, and understand what's reasonable under the law and justify their actions based on the case law that they know. And what is the, what does the record show the training was about this? That, that, uh, well, there, the policies and procedures that plaintiffs refer to talk about, uh, you need to have a warrant either to search the property or you need to have an exception, which would be exigent circumstances and probable cause. The officers went with that training. They had exigent circumstances by the flight of the suspect. They had probable cause based on the alert of the dog and the possibility of people, of people being able to hide in the yard in places that weren't visible over the wall. So there's, uh, while plaintiffs explain that there, this is a case, one of those cases that shows this is inadequate training, this is not one of those cases, Your Honors. Also, plaintiffs had, have provided most of their arguments based on their expert who had differing opinions. Our, the, the defendant's expert also had differing opinions. It is reasonable for officers to have an idea of what's going on at the time based on the circumstances and have a reasonable opinion and then have an expert who disagrees with that opinion because they think it wasn't done reasonably. That's, that's just the nature of the law. However, the Supreme Court has recognized that, uh, it is inevitable that law enforcement officials will, in some cases, reasonably, but mis, oh, excuse me, that, um, in some cases, uh, a plaintiff cannot avoid summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless. Because people can disagree on the reasonableness of the, the, uh, facts at hand, we are looking to objective reasonability. And in this case, it, it is clear that the officers had objectively reason, that their, their actions were objectively reasonable under the law at the time of this case. It would, it would additionally be objectively reasonable under the Lange standard, the Lange versus California standard as well, which requires the courts to go back to the analysis of totality of the circumstances known to officers at the time. While in that case, the officers were chasing someone accused of a DUI and they followed that person into their house, um, and that was found to be unreasonable, the court said that not all, uh, cases involving pursuit of a fleeing misdemeanant are unreasonable. There is no clear bright line rule for that. Instead, the courts have to look at the totality of the circumstances to determine whether the actions were objectively reasonable. What about the dog shooting, Monel, claim? Uh, uh, for the dog shooting, Your Honor, plaintiffs have cited to two previous cases, um, that were from, actually from 2013, incidents that happened in 2013, which was, uh, six years prior to this incident. This does not show a clear pattern of any violation and as discussed in our brief, the, uh, Walker case, actually the, the city, um, the city, uh, the Monel claims, excuse me, were, uh, excuse me, summary judgment was awarded to the city on the Monel claims in the Walker case, uh, and the Wheeler, or I, I apologize, I might have that wrong. The Walker case, the claims were dismissed and the, um, oh, no, that, I, I apologize, Your Honors. The Wheeler case is where the claims were dismissed and the Walker case is where the claims summary judgment was found in favor of the city on those claims because the court did not see any looking through several, I think it was hundreds of cases of, uh, from, from the city. There was no practice or pattern that showed, uh, that showed officers were constantly violating the Constitution. And do you think Hell's Angels is still good law? I, I, I do, Your Honor. I think that if you are going into a situation where you know and you have time to plan for dogs being in the area, that you have to consider other reasonable methods of either, uh, containing the dogs or using force necessary to, uh, to contain the dogs prior to using lethal force. There needs to be a plan in place. In this case, it's distinguishable because the officers were in a fluid, rapidly evolving situation in the backyard. Lieutenant Falcoff did not ultimately, he did not immediately result to deadly force on the dogs. When the dogs came out of their dog houses, even though he had indicia of dogs, it was somewhat of a surprise after all the noise that they had been making and, um, and the dogs not appearing prior to that time. However, he didn't immediately shoot the dogs just upon seeing the dogs. He tried to make, he tried to use different methods of separating himself and canine storm from the dogs, including, uh, barricading himself and canine storm in the alcove on the side of the house with the trash cans to, to create a barrier. Unfortunately, the dogs broke through that barricade and then attacked canine storm. He then used kicking and trying to pry the jaws off the dogs, uh, which showed that he used reasonable force at that time prior to using lethal force. We have you over your time. Thank you, counsel. I appreciate it. Thank you. Let's put four minutes on the clock, please, for rebuttal. I want to make clear about the immediacy. At least 18 minutes lapsed, elapsed. We don't have body cam in this case, but officer Salkoff was at a separate location, came to the scene, talked to officer Rose. They ran a background check and there was just no immediacy of this search, not even frankly clear that whether a crime was committed, let alone that the person that officer Rose said he saw went over the wall was the suspect. With regard to the alert, there are sufficient issues of disputed fact about whether the alert would, would, relying on that alert was, was reasonable. It didn't create probable cause. Storm just lifted his head and changed his behavior. It's not just our expert testimony. Uh, it's common sense. There, the canine couldn't speak and say there's a suspect in that yard. The canine wasn't a tracking dog that had anything of the suspects. There's just no sufficient basis. In fact, what canine Storm was alerting to was the dogs. And as our expert explained, that there were, because there were dog loos in the yard, not only should Salkoff have known that there were dogs in the yard, but a reasonable officer would have questioned whether it was really a human being he was alerting to, let alone the suspect. The, this case, there was a case that came to my attention last night that was decided after we submitted our reply briefs, and that's the, the Newman v. Underhill case. And the differences between this case and that case where the court did find that the hot pursuit exception applies are very stark. And while there, there was a break in, uh, in the, the direct visuals on the suspect, it was only nine minutes. Additionally, um, there's not, in fact, clear evidence and testimony about what this perimeter was. The perimeter, according to Rose, could have been east, west, north, south, and it was just an, it was just the neighborhood, which obviously each home in the zone, uh, each home in the neighborhood has a zone of privacy. But what's very different about the alleged perimeter, and the testimony's very vague on the perimeter in this case, what's different is that the perimeter in the, uh, Newman v. Underhill case, it was contained. There were specific facts about the nature of the position of that property. Kagan. That's a case I'm not familiar with because it wasn't in the briefs. Is that a case from our court? It is. Um, we, we'd be happy to submit something after oral argument with that citation. It's from this court. It specifically addresses the hot pursuit exception. And I apologize. My co-counsel brought it to my attention. We found it late last night. But it's very, they did find an exception, but the differences between that case and this case are very illuminating and we'd be happy to submit a supplemental authorities if that's, if that would, would, would please the court. But, uh, both the perimeter and the two things that they have to claim that the search was reasonable, that there was probable cause are the perimeter and the alert here. Both of them fail. Um, the, uh, not only is it unreasonable to think that the dog, a dog just lifting his head and reacting to something meant that there was a human suspect, let alone this suspect, uh, and not only was the perimeter, not a contained area in which it's reasonably likely to believe the suspect was contained, let alone, uh, did that apply to the plaintiff's  There's other things that this court looks at in evaluating whether there's a hot pursuit. And one of those factors is the seriousness of the crime. And while I don't undervalue the nature of domestic violence here, the officer Solkov's report, and I think that's at ER 276, says that the, they never pursued the charges in part because the, the injuries appeared old. And he said that was consistent with observing stitches on the victim. And so there was the seriousness of the crime element. I think setting, we're not, we're not claiming that because it was a misdemeanor that it, that they needed to, that there's, uh, an issue because we understand for the clearly established wrong, it doesn't matter. But additionally, um, an important factor is the lack of connection to any criminal wrongdoing. The plaintiffs had zero connection to any criminal wrongdoing. And those are the other factors this case, this court looks at. It is clearly established, the Fourth Amendment right to be free of an unreasonable search and to be free of a search, uh, under these circumstances. In this Court's case, as in Johnson. Okay, you're way well over your time. Could you wrap up please? Yes. In this Court's holdings, in Johnson and Windsor are very clear and apply here. It's clearly established law. Thank you both sides for the very helpful arguments. This case is submitted.
judges: FRIEDLAND, MENDOZA, Lasnik